**Donald GREEN, a minor by William Green, his guardian**

**and**

**William Green, as parent**

**v.**

**SANITARY SCALE COMPANY, an Illinois Corporation, Defendant and Third-Party Plaintiff,**

**v.**

**Max BERMAN, Third-Party Defendant.**

**Civ. A. No. 33966.**

United States District Court
E. D. Pennsylvania.
Feb. 13, 1969.

Herbert Somerson, Zarwin, Prince, Baum, Steerman & Somerson, Philadelphia, Pa., for plaintiff.

Thomas Raeburn White, Jr., White & Williams, Philadelphia, Pa., for Sanitary Scale Co.

Raymond J. Porreca, Philadelphia, Pa., for Max Berman, third-party defendant.

## OPINION AND ORDER

JOHN MORGAN DAVIS, District Judge.

Donald Green, then age 16½, lost four fingers as a result of placing his hand in an electric meat grinding machine. He was working part time, after school and on Saturdays in the meat market of Max Berman, third party defendant. The machine was manufactured by the defendant Sanitary Scale Company. Although the plaintiff initially was employed primarily to wrap and package meat and to make deliveries, he had on about a dozen occasions operated the meat grinding machine on instructions from the butcher in charge. The machine as originally sold to the third party defendant was equipped with a detachable tray which contained a safety guard. In addition, the machine came equipped with a "pusher" or plunger for the purpose of forcing meat through an orifice into the grinding mechanism.

At the time of the accident however, the plaintiff was operating the machine without the guard installed and without the benefit of the plunger.

A jury trial resulted in a verdict in favor of the plaintiffs and in favor of the third party plaintiff against the third party defendant. The latter parties have filed motions for judgment n. o. v. and alternatively, for a new trial.

## PRINCIPAL ACTION.

### I.

█ It is alleged that the Court erred in failing to charge the jury regarding assumption of risk. We do not join in defendant's assertion that the plaintiff's testimony could reasonably have permitted a jury to conclude that the plaintiff assumed the risk, i. e., that he possessed actual knowledge of the danger, and voluntarily acquiesced therein.[1] Pritchard v. Liggett & Myers Tobacco Company, 350 F.2d 479 (3rd Cir. 1965).

██ In addition, it is apparent that Pennsylvania law (which we are obliged to follow in diversity cases of this nature), precludes the assertion of assumption of risk as a defense where the plaintiff/employee is employed by one other than the defendant. This principle was first set forth in Kulka v. Nemirovsky, 314 Pa. 134, 139, 170 A. 261, 262 (1934):

> Moreover, as plaintiff was employed by another and not by defendant, the doctrine of assumption of risk did not apply to him.

Subsequently, Kulka was cited with approval in Stark v. Lehigh Foundries, Inc., 388 Pa. 1, 10, 130 A.2d 123 (1957), although the facts in *Stark* could conceivably have precluded discussion of assumption of risk, as Judge Van Dusen observed in Witcjak v. New Franklin Coal Mining Co., 173 F.Supp. 661 (E.D. Pa.1959).

While we recognize that the availability of the defense of assumption of risk in an industrial injury may be less than clear, we are constrained to follow the above decisions of the Commonwealth. This was recently approved in Hennigan v. Atlantic Refining Co., 282 F.Supp. 667 (E.D.Pa.1967), aff'd per curiam, 400 F.2d 857 (3rd Cir. 1968), which also involved an industrial accident case where the court declined to charge the jury on assumption of risk.

1. See Trial N.T. p. 95.
2. See N.T. p. 323.
3. See N.T. p. 324. Rule 4 of the Department of Labor and Industry regula-

### II.

█ During the course of the trial, the plaintiff was permitted to admit over objections of the defendant, certain rules and regulations of the Pennsylvania Department of Labor and Industry; specifically Rule 4, which sets forth the safety standard for construction and design of meat grinders (P. EX. 1). The defendant asserts that although these safety standards may be germane in the third party action, they are inapplicable in the action in chief, since the regulations are applicable only to "establishments" within the Commonwealth of Pennsylvania. Since the defendant is an Illinois corporation, it asserts that it was not an "establishment" within the meaning and intent of the Regulation.

This argument disregards the purpose for which the regulations were admitted. In the charge, the Court expressly limited their consideration by the jury, by stating that:

> Rule 4 dealt specifically with the safety standard for meat grinding. The failure to measure up to the standards cannot be considered conclusive evidence that the manufacturer was negligent, for the focus of these regulations is toward the conduct of persons or employers who run businesses within the state, and not toward manufacturers of chattels.[2]

The charge then continued:

> However, you may consider these regulations as a factor in determining whether the defendant negligently designed its meat grinder; that is, you may consider whether the defendant should have followed these standards or ones similar to them when they designed their meat grinder, and whether failure to follow such standards was a lack of due care.[3]

In Smith v. Hobart Mfg. Co., 194 F. Supp. 530 (E.D.Pa.1961), the aforemen-

tions for miscellaneous hazards and conditions of employment provides:

> (a) All power-driven meat grinders of the worm type shall be so constructed

tioned 'regulations were held admissible against an *out-of-state* manufacturer of food machinery, again solely as one facet of evidence (or "factor") establishing a design safety standard. Since the defendant was charged in the complaint, *inter alia*, with negligent design of the meat grinding machine, the plaintiff was entitled to rely on any competent evidence tending to establish the minimum acceptable standard of design and construction. The aforementioned regulation clearly is relevant in this regard, provided that proper limiting instructions are given to the jury. See Walsh v. Miehle-Goss-Dexter, Inc., 378 F.2d 409, 413 (3rd Cir. 1967). All other regulations which were brought to the attention of the jury were expressly limited to the third party action. See N.T. p. 325–326.

### III.

■ Similarly, the testimony of the witness Oravecz, Director of the Bureau of Industrial Standards, Commonwealth of Pennsylvania, was not improper. Oravecz, who was also qualified as an expert in industrial machinery and equipment, was asked whether the defendant's meat grinding machine would have met with Bureau approval.[4] The defendant asserts that this was error, since the Bureau standards are not necessarily identical to the requisite standard of care under the common law of torts.

We are not persuaded by this argument, for three reasons. First, the witness was available to the defendant for cross-examination at which time it could be established if the Bureau standard exceeded, was equal to, or was less than the standard of care otherwise imposed by law. Secondly, the jury was thor-

oughly instructed regarding the probative value and purpose of testimony of this nature.[5]

Finally, the instruction that the standards of the Bureau "cannot be considered conclusive evidence" that the manufacturer was negligent[6] placed testimony of this witness in its proper perspective.

### IV.

■ It is asserted that the Court erred in denying the defendant's first three points for charge. They are as follows:

1. Defendant is not required to manufacture the safest conceivable machine. It is sufficient if it is reasonably safe for the purpose intended.

2. The defendant was not obligated to design his product so as to render it wholly incapable of producing injury.

3. Even if you find that the removable tray rendered the machine potentially dangerous you may not render a verdict for the plaintiff unless you conclude that the defendant had no reason to suppose that the user would not be aware of the danger of using the machine without the tray.

Points 1 and 2 were denied, since they essentially set forth what the defendant is *not* required to do (i. e., manufacture the safest conceivable machine, or design a product as to render it wholly incapable of producing injury). While this may be so, it does not accurately set forth the standard to which the defendant is expressly and *affirmatively* held under the law, i. e. to design a meat grinder that would be reasonably safe for

---

that meat can be safely fed to the worm by one of the following methods:
1. By a mechanical method of feeding the worm,
2. By the use of a permanently attached neck to the cylinder enclosing the worm which shall have an opening of not more than 2½ inches in diameter at a point at least 4½ inches above the worm.

3. Other means of protection may be provided when approved by the Industrial Board.

4. See N.T. p. 155.

5. See N.T. pp. 319, 320.

6. See N.T. p. 323.

its intended use.[7] In the interests of clarity, the Court was constrained to rule that points 1 and 2 are "denied as stated."[8]

■ Point 3 was essentially covered in the Court's charge which stated:

> An important element in deciding whether Sanitary Scale Company was negligent is the question of foreseeability. This defendant can be held liable for damages only if it could have reasonably anticipated or foreseen that the failure to act prudently would cause harm.[9]

## V.

■ Finally, the defendant asserts that a juror should have been withdrawn when the plaintiff's attorney commented on the failure of the defendant to call witnesses listed in its pre-trial memorandum.

This is without merit, for two reasons.

First, it is proper to so comment, if the listed witnesses were in the control of the party who elects not to call them, and if a reasonable inference may be drawn that their expected testimony would be favorable to that party. Cromling v. Pittsburgh & L. E. R. Co., 327 F. 2d 142 (3rd Cir. 1963); Blackstone v. Osche, 192 F.Supp. 174 (W.D.Pa.1961); Vigderman v. United States, 175 F.Supp. 802 (E.D.Pa.1959); Burch v. Reading Co., 140 F.Supp. 136 (E.D.Pa.1956), aff'd 240 F.2d 574 (3rd Cir. 1957).

■ In addition, we are required to consider this allegation of error as waived. In his brief, the defendant states that:

> The arguments were taken down in shorthand but not transcribed, and this point is being made simply to preserve it for the purpose of the record.

> If it should become necessary, counsel may request that the speeches be transcribed so that the point may be fully argued.

It is clear, however, that in this District a moving party is required to order in writing, the notes of testimony which are germaine, if he intends to pursue an allegation of error. See Local Rule 31. This Rule is intended, *inter alia,* to prevent precisely what the defendant is herein attempting, namely to argue or at least "preserve" an allegation but without affording the Court or opposing counsel the benefit of transcript. Having failed to order the relevant transcript in a timely manner, the allegation of error will be deemed waived. Smith v. Sharples Co., 44 F.R.D. 422 (E.D.Pa. 1968); Dantzler v. Defender Shipping Co. Inc., 285 F.Supp. 541 (E.D.Pa.1968); Tarter v. Mylin, 258 F.Supp. 818, 819 (E.D.Pa.1966).

## THIRD PARTY ACTION

### I.

■ The third party defendant first asserts that it was error to permit the defendant to introduce via cross-examination of the third party defendant, the issue of violation of Pennsylvania Department of Labor and Industry Rules and Regulations.

In so asserting, the third party defendant claims "surprise". It is true that no mention of contemplated reliance upon violation of statutes, rules or regulations was included in the third party plaintiff's complaint or pre-trial memorandum. However, the third party defendant did indeed receive *actual* notice of the pendency of this contention in the *plaintiff's* pre-trial memorandum [document 26), where it was stated, inter alia, that:

> the negligence and carelessness of the third party defendant, Max Berman consisted in the following: (a) allowing a 16 year old minor to operate said machine in violation of the laws of Pennsylvania.

---

7. See N.T. p. 322.

8. See N.T. pp. 295–296.

9. See N.T. p. 322.

In addition, the plaintiff's lists of witnesses included:

An individual from the Pennsylvania Department of Labor (Name presently unknown).

It is apparent that the third party defendant was aware of the above, since he stated in his pre-trial memorandum (document 28) that his witnesses would be "those set forth by plaintiff and defendant". Consequently, having had actual knowledge of the pendency of the statutory claim, the third party defendant's contention of surprise is clearly without merit.[10]

## II.

▉▉▉ The assertion that the Court ruled inconsistently on two occasions regarding knowledge of the aforementioned statutes and regulations, is also without merit.

On the first occasion to which the third party defendant alludes, the Court permitted the defendant to cross-examine the third party defendant who had been called on direct by the *plaintiff* regarding his (3rd party defendant's) knowledge of the aforementioned statute and regulations. This testimony was directly relevant in order to rebut any inference which the plaintiff may have created on direct, that although the plaintiff "worked himself up to the butcher shop"[11] from delivery boy, he only ground meat "on rare occasions".[12]

In the latter situation, an expert called by the plaintiff essentially for the purpose of establishing the unsafe design of the meat grinding machine, was not permitted by the Court to embark into an area which exceeded the scope of the direct testimony.[13] This was merely the implementation of a rudimentary rule of evidence. However, defense counsel was expressly given leave to recall the expert as part of his own case to explain

this specific area. Accordingly, the two rulings were clearly not inconsistent.

## III.

▉▉▉ It is further alleged that the Court erred in charging the jury that certain regulations and statutes of the Department of Labor and Industry resulted in the third party defendant being adjudged negligent as a matter of law.

After citing the statute which proscribed, *inter alia*, the removal of safeguards from machinery (PX 1, § 1(a) and 43 P.S.Pa. § 25–6), and the employment of persons less than age 18 in certain purposes, including the operation of power driven meat grinding machines (Regulation Rule M–36), the charge of the Court then continued:

If Max Berman violated one or both of these statutes, and it was a cause of the plaintiff's injuries, you can find him guilty of negligence. Under Pennsylvania law, the violation of a state statute which is a cause of injury is negligence *per se*. (N.T. p. 325).

With regard to the latter regulation, counsel asserts that Max Berman "did not *employ* plaintiff for this purpose [grinding meat] but that in plaintiff's apprenticeship, the latter *incidentally* used the machine under the supervision of two other butchers". Whatever factual significance exists between "employment" and "incidental use" is clearly a question for resolution by the jury. The fact remains that the plaintiff was no longer employed merely as a delivery boy but had been elevated essentially to the status of apprentice, with the duty, *inter alia*, of operating the meat grinder. Since the duties of a butcher (or apprentice) normally include grinding meat, the jury was indeed justified in concluding that Max Berman "violated one or more of these statutes," and that the violation "was a cause of the plaintiff's injuries,"

10. Also, the Standing Order of this Court, dated October 23, 1958 pertaining to pre-trial conferences, authorizes any party to call any witness listed in *any* pre-trial memorandum, or supplements thereto.

11. See N.T. p. 38.

12. Ibid.

13. See N.T. p. 182.

as the charge of the Court indicated. See Walsh v. Miehle-Goss-Dexter, Inc., 378 F.2d 409 (3rd Cir. 1967); Matulonis v. Reading R. Co., 421 Pa. 230, 219 A.2d 301 (1966).

### IV.

■ The third party defendant contends that the interrogatories to the jury (document 32) were erroneous, since they permitted the jury to determine the negligence of the third party defendant notwithstanding a possible finding of no negligence on the part of the defendant. This is without merit for the following reasons:

First, the function of Rule 49(b) interrogatories accompanying a general verdict is to permit the jury to reach its decision in a rational and orderly manner. See Skidmore v. Baltimore and O. R. R. Co., 167 F.2d 54 (2nd Cir. 1948). Upon an examination of the answers contained therein, the Court is empowered to mold a verdict if necessary. The answers themselves need not be dispositive of the factual issues present in the action.

Second, whether the sequence of the interrogatories as submitted was incorrect is academic, since the jury in the instant case indicated that *both* the defendant and third party defendant were negligent.

Finally, we observe that the third party defendant has waived any objection to the wording, sequence or content of the interrogatories to the jury at the proper time:

The Court: Is there any objection?

Mr. Somerson: I am satisfied with all five interrogatories.

The Court: Any objection, Mr. Porreca?

Mr. Porreca: No. Sir.

The Court: You are satisfied with the five?

Mr. Porreca: Yes, sir.

The Court: These are the five we will give. (N.T. p. 315).

### V.

■ It is asserted that the third party plaintiff did not establish any right of contribution by the third party defendant, and the Court erred in not directing a verdict in favor of the third party defendant.

Suffice to say that there was substantial evidence that the third party was not only negligent *per se* for violating the aforementioned statutes and regulations, but also under the common law of negligence in failing to warn the plaintiff regarding the use of the unsafe meat grinder, and indeed in failing to require the operation of the machine only with the guard installed.

Whether the accident would have happened anyway had the guard been installed, is a matter of pure conjecture. The resolution of this question was properly the function of the jury, regardless of what any retrospective analysis may suggest. Clearly, there was sufficient demonstration of negligence on the part of the third party defendant for the jury to reasonably resolve this question adverse to the third party defendant. This is all that is required under Pennsylvania law. See Smith v. Bell Telephone Co. of Pa., 397 Pa. 134, 138, 153 A.2d 477 (1959).

### VI.

■ Finally the third party defendant correctly asserts that his liability is limited to the amount he has paid the plaintiff under the Pennsylvania Workmen's Compensation Act. The judgment, if inconsistent, may be modified accordingly.

The motions of the defendant and the third party defendant will otherwise be denied for reasons set forth above.

It is so ordered.