469 A.2d 176

**Jerry M. BEARY, Appellant**

**v.**

**PENNSYLVANIA ELECTRIC COMPANY, a Corporation and Glass Containers, a Corporation**

**v.**

**EDWARDS TANK ERECTION, INC.**

Superior Court of Pennsylvania.

Argued Feb. 24, 1983.

Filed Nov. 18, 1983.

54

John R. Gavin, Oil City, for appellant.

Eugene F. Scanlon, Jr., Pittsburgh, for PA Electric, appellee.

Chester S. Fossee, Pittsburgh, for Glass, appellee.

Henry R. Pope, III, Clarion, for Edwards, appellee.

Before SPAETH, BROSKY and MONTEMURO, JJ.

SPAETH, Judge:

This is an appeal from a judgment in a personal injury action. Appellant, plaintiff below, argues that the trial

court erred in ordering a directed verdict in favor of appellee, Glass Containers Corporation. We agree and therefore reverse and remand for a new trial.

On September 13, 1978, appellant, as an employee of Edwards Tank Erection, Inc., was helping install a steel storage tank at appellee's plant in Knox, Pennsylvania. The moving and assembly of the tank's component steel plates required the use of a mobile crane, which was supplied by Edwards Tank Erection. Appellant was directed to help the crane operator move an electric "panel box" to a nearby site, where the steel plates would be welded together to form the tank. Holding the panel box steady by means of a coil of wire attached to the panel box, N.T. 173–174, appellant walked backwards, ahead of the moving crane. After he and the crane had proceeded in this manner for about 100 feet, the crane's load line touched some electric power lines, causing appellant to sustain serious injuries. N.T. 180–181.

Appellant brought this action in trespass against Pennsylvania Electric Company and appellee, and appellee joined Edwards Tank Erection as an additional defendant. After appellant completed his presentation of evidence, the trial court granted Pennsylvania Electric's motion for a compulsory nonsuit but denied appellee's motion for a compulsory nonsuit, finding "some evidence of negligence on the part of [appellee]." N.T. 355, 363. Appellant does not challenge the correctness of the court's ruling as to Pennsylvania Electric. After all of the evidence had been presented, the court granted appellee's motion for a directed verdict, with the following order:

And Now, October 23, 1981, we the Jurors empanelled in the above case find that the percentage of causal negligence attributable to the Plaintiff exceeds the causal negligence attributable to the Defendant Glass Containers Corporation.

N.T. 589.

–1–

Appellant first argues that since there was some evidence of appellee's negligence the trial court should have allowed the jury to consider that evidence instead of directing a verdict in appellee's favor.

While a trial court should not submit to a jury for its determination an issue on which there is no evidence, *Downing v. Shaffer*, 246 Pa.Super. 512, 371 A.2d 953 (1977), the court should direct a verdict "only in a case where the facts are all clear, and there is no room for doubt...." *Stephens v. Carrara*, 265 Pa.Super. 102, 105, 401 A.2d 821, 823 (1979); *Cox v. Equitable Gas Co.*, 227 Pa.Super. 153, 324 A.2d 516 (1974). In deciding whether a case is "clear," the court should consider the evidence in the light most favorable to the party opposing the motion, accepting as true all of the evidence that supports that party's contention and rejecting all adverse evidence. *Litman v. Peoples Natural Gas Company*, 303 Pa.Super. 345, 347, 449 A.2d 720, 721 (1982). Also, the court should give the party opposing the motion the benefit of all reasonable inferences arising from the evidence and favorable to that party. *Evans v. Goldfine Truck Rental Service*, 241 Pa.Super. 329, 361 A.2d 643 (1976).

When regarded in this manner, the evidence discloses the following. Appellee's employees were aware of the electric power lines on their plant's property. N.T. 36. Although warning signs referring to "danger, high voltage" were used at the plant, there were none at the location of the electric power lines involved in this accident. *Id.* 42–43, 72, 108. Appellee's project engineer knew that the crane would be moving the panel box along a road that went under the power lines, *id.* 80, 85, but he did not warn Edwards Tank Erection's employees about the power lines, *id.* 81. The project engineer also knew of the availability of protective devices to cover the power lines, *id* 89–90, and appellee's chief electrician knew that protective devices had been used on the power lines, *id.* 122–125. An expert witness, a professor of Industrial Engineering, testified that appellee

did not have a "sound safety program," *id.* 309; that operation of a mobile crane within the general vicinity of a power line is a serious hazard, *id.* 315, 332–333; and that appellee should have "point[ed] out the high voltage line['s] 34,500 volts as a very serious hazard and ... develop[ed] countermeasures with the contractor," *id.* 350.

■ The trial court states in its opinion that "there is no evidence, direct or circumstantial, by which the jury could conclude that [appellant's] injuries were caused by [appellee's] negligence." Slip op. at 2. We are unable to join in this conclusion.

■ Section 343 of the Restatement (Second) of Torts (1965) states:

§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A Possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

From the summary of the evidence just concluded, it is apparent that the jury could have found that these conditions were satisfied. The question is not whether the jury *would* have so found, for "where there is *any* evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof." *Smith v. Port Authority Transit*, 257 Pa.Super. 66, 71, 390 A.2d 249, 251 (1978), *quoting Heffernan v. Rosser*, 419 Pa. 550, 554–555, 215

A.2d 655, 657 (1966). *See also Yandrich v. Radic*, 291 Pa.Super. 75, 435 A.2d 226 (1981).

It should be noted that clause (b) of Section 343 presents an alternative: "should expect that they will not discover or realize the danger, *or* will fail to protect themselves" (emphasis added). We may assume for the sake of discussion that the jury would have found that appellant and the crane operator must have seen the electric power lines. It does not follow, however, that the jury could not have found that clause (b) was satisfied.

Under the first alternative provided in clause (b), the jury could have found that although appellant and the crane operator had seen the lines, they had not—unlike appellee—discovered, and therefore did not realize, their danger. Thus in *Stimmel v. Kerr*, 394 Pa. 609, 148 A.2d 232 (1959), two workers were electrocuted when an A-frame by means of which they were unloading steel trusses touched overhanging power lines. The Supreme Court stated:

> "The presence of the power lines in and of itself did not indicate obvious danger. Plaintiff was not bound to know the degree of danger involved. 'Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case.' "

*Id.*, 394 Pa. at 612, 148 A.2d at 233, quoting *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 8, 130 A.2d 123, 128 (1957) (citations omitted).

Under the second alternative provided in clause (b), the jury could have found that even if appellant and the crane operator did realize the danger of the power lines, still, appellee should have expected that because of their preoccupation with moving the panel box, they would "fail to protect themselves against it." In this regard, Section 343A. of the Restatement states in part:

§ 343A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.* (Emphasis added)

And Comment f to Section 343A states in part:

f. There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take *other reasonable steps to protect him,* against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that *the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. . . .* (Emphasis added).

 In *Stimmel,* the Supreme Court cited Section 343, and in *McKenzie v. Cost Bros. Inc.,* 487 Pa. 303, 309–10, 409 A.2d 362, 364–365 (1979), the Court expressly adopted the section. In *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 88, 394 A.2d 546, 552 (1978), the Court quoted Section 343A and Comment f to that section, holding, "Thus, an invitee in certain circumstances must be protected even from obvious dangers [citations omitted]." The duty of a landowner to business visitors is the highest duty owed any entrant upon land. *Treadway v. Evert Motor Co.,* 292 Pa.Super. 41, 436 A.2d 994 (1982); *Crotty v. Reading Industries, Inc.,* 237 Pa.Super. 1, 345 A.2d 259 (1975). The standard of conduct required by this duty is in proportion to the apparent risk. "If the danger becomes greater, the actor is required to exercise caution commensurate with it." W. Prosser, Handbook of the Law of Torts

180 (4th ed. 1971). Whether appellee exercised such caution was a question for the jury to decide.

–2–

Although, as we have noted, the trial court in its opinion explains its order directing a verdict by stating that there was no evidence of appellee's negligence, in the order itself, as we have also noted, the court only stated that appellant's negligence was *greater* than appellee's. N.T. 589. ("percentage of causal negligence attributable to the Plaintiff exceeds the causal negligence attributable to the Defendant Glass Containers Corporation"). This implies that the court found some negligence on the part of appellee, albeit less than on the part of appellant. Such an order is governed by 42 Pa.C.S.A. § 7102, which provides:

> (a) General rule.—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

In *Peair v. Home Association of Enola Legion No. 751*, 287 Pa.Super. 400, 430 A.2d 665 (1981), this court noted its reluctance to approve a directed verdict in a comparative negligence context:

> "Because of the very nature of the comparative negligence doctrine, situations in which directed verdicts will be appropriate will occur with even less frequency, particularly where the plaintiff's own negligence is in issue."
> *Id.*, 287 Pa.Superior Ct. at 407, 430 A.2d at 669, *quoting Petroleum Carrier Corp. v. Gates*, 330 So.2d 751, 752 (Fla.D.C.App.1976).

We also said in *Peair* that

> the totality of causal negligence is a matter properly determined by the jury, and . . . only in rare cases should

a court hold as a matter of law that the negligence of one party is equal to or greater than that of the other. *Id., citing Cirillo v. Milwaukee,* 34 Wis.2d 705, 150 N.W.2d 460 (1967).

We have no difficulty in concluding that the present case is not such a rare case.

–3–

Since another trial will be required in this case, we think we should also address appellant's remaining argument, which is that the trial court erred in admitting into evidence the following provision contained in appellee's contract with Edward Tank Erection:

SAFETY. Contractor shall supply and use all safety equipment necessary to protect workmen on the job site in accordance with all applicable governmental safety regulations and insurance requirements. All work performed under this contract shall comply with all applicable governmental building and safety codes, and the requirements of the Factory Mutual System. All equipment supplied by Contractor shall comply with the Industrial Safety Code of the state in which the equipment is installed.

Appellant argues that by admitting this into evidence, the court permitted appellee to raise the issue of Edwards Tank Erection's liability.

We agree with appellant that Edwards Tank Erection's liability was not an issue for the jury, for Section 303(b) of the Pennsylvania Workmen's Compensation Act, 77 P.S. §§ 1 *et seq.,* bars joinder of an employer as an additional defendant on the issue of the employer's liability. But it does not bar joinder on the issue of the employer's contractual obligation to pay indemnity, *Gallagher v. Transport Pool Incorporated,* 281 Pa.Super. 188, 421 A.2d 1212 (1980); *Szemanski v. Vulcan Materials Co.,* 272 Pa. Super. 240, 415 A.2d 92 (1979).

We note, however, that although the trial court granted a motion to bifurcate the liability and indemnifica-

tion issues, N.T. at 1–10, it nevertheless allowed evidence of the contract between appellee and Edwards Tank Erection to be introduced during trial of the liability issue. Since appellee's alleged right to indemnification would arise only if it were found liable to appellant, *F.J. Schindler Equipment Co. v. Raymond Co.*, 274 Pa.Super. 530, 418 A.2d 533 (1980), and since evidence of the contractual safety provision was only relevant to the indemnification issue, it would have been better practice to defer evidence of the safety provision until the liability issue had been resolved. *See also* Goodrich-Amram 2d § 2231(d):4 at 522 (party's right to indemnity does not arise until judgment is entered against him); *Travelers Ins. Co. v. Bank Bldg. & Equipment Corp. of America*, 307 F.Supp. 510 (E.D.Pa.1969) (on claim for indemnity it is necessary that indemnitee has been found liable).

Judgment reversed and case remanded for new trial consistent with this opinion.